David C. O'Mara, Esq (SBN 08599)
**THE O'MARA LAW FIRM, P.C.**
311 E. Liberty Street
Reno, Nevada 89501
Telephone: 775-323-1321
Fax: 775-323-4082
*david@omaralaw.net*

John P. Kristensen
(*Pro Hac Vice Pending)*
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Fax: 310-507-7906
*john@kristensenlaw.com*

Jonah A. Flynn
(*Pro Hac Vice Pending)*
**Flynn Law Firm, LLC**
4200 Northside Parkway NW
Building One, Suite 200
Atlanta, Georgia 30327
Telephone: 404-835-9660
*jflynn@flynnfirm.com*

*Attorneys for Plaintiff*
*Marlonesha Becker*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| MARLONESHA BECKER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> KAMY KESHMIRI, an individual; JAMY KESHMIRI, an individual; FANTASY GIRLS, LLC, a Nevada limited liability corporation; DOE MANAGERS 1-3; and DOES 4-100, inclusive, <br><br> Defendants. | ) Case No.: <br> ) **COLLECTIVE ACTION** <br> ) **COMPLAINT FOR DAMAGES** <br> ) **(1) Failure to Pay Minimum Wage, 29 U.S.C. § 203(d);** <br> ) **(2) Failure to Pay Overtime Wages, 29 U.S.C. § 207; and** <br> ) **(3) Unlawful Taking of Tips and Diversion/Kickback in Violation of 29 U.S.C. § 203** <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) |

Plaintiff MARLONESHA BECKER, individually and on behalf of all others similarly situated, alleges the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.    NATURE OF THE ACTION

1.    Plaintiff MARLONESHA BECKER ("Plaintiff" or "Becker"), and all persons similarly situated, and alleges causes of action against defendants KAMY KESHMIRI, an individual, JAMY KESHMIRI, an individual, FANTASY GIRLS, LLC, a Nevada limited liability corporation and DOE MANAGERS 1-3, and DOES 4 through 100, inclusive (collectively, "Defendants") for damages.

2.    The Defendants required and/or permitted Becker, and all those similarly situated to work as an exotic dancer at their adult entertainment club, Fantasy Girl in Reno, Nevada. Plaintiff worked at the clubs, run out of Washoe County, Nevada, in excess of forty (40) hours per week, but refused to compensate her at the applicable minimum wage and overtime rates under both Federal and Nevada law. In fact, Defendants refused to compensate Plaintiff or those similarly situated whatsoever for any hours worked. Plaintiff, and those similarly situated, were only compensated in the form of tips from club patrons. Moreover, Plaintiff and those similarly situated were required to divide her tips with Defendants and other employees who do not customarily receive tips. These were all done under the auspices whereby Defendants violated the Fair Labor Standards Act and/or the Tip Income Protection Act, 29 U.S.C. § 203 ("TIPA") and by unlawfully seizing a portion of Plaintiff's tips. Therefore, Defendants have failed to compensate Plaintiff at the federally-mandated minimum wage rate.

3.    Defendants' conduct violates the Fair Labor Standards Act (FLSA), which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a). Defendants also required Plaintiff and to make certain payments to Defendants' employees and others which caused Plaintiff's wages to drop below the minimum

wage and applicable overtime wage, thereby constituting an illegal deduction under the FLSA. As a result of Defendants' violation of the FLSA, Plaintiff seeks all unpaid minimum and overtime wages, recovery of unlawful deductions, liquidated damages, interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216.

4.     During her time being employed by Defendants, Plaintiff, and those similarly situated, was denied minimum wage minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiff and other dancers as "independent contractors." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what Defendant is doing in this case.

5.     Plaintiff worked at Defendants' Fantasy Girl club during the past three years.

6.     Defendants failed to pay Plaintiff, and those similarly situated, minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").

---

[1]     *See* DOL Admin. Interp. No. 2015-1, at http://www.dol.gov/whd/workers/Misclassification/AI-  2015_1.pdf.



7.     Defendants' conduct violates the Fair Labor Standards Act (FLSA), which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

8.     Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision.  *See* 29 U.S.C. § 206.

9.     Defendants forcing Plaintiff and those similarly situated to pay House Fees just to work further violates the FLSA.

10.     Plaintiff brings a collective action to recover the unpaid overtime compensation and minimum wages, stolen tips and illegal house fees owed to her individually and on behalf of all other similarly situated employees, current and former, of Defendants in Nevada. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

11.     As a result of Defendants' violations, Plaintiff and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, recover diverted income, interest, and attorneys' fees.

## II.    NATURE OF THE ACTION

12.     Plaintiff is an individual adult resident of the State of California. Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit "1".

13.     Defendant JAMY KESHMIRI is an individual who resides in Washoe County, Nevada California. He is the owner, controlling shareholder, and exerts day to day management over the defendant entities FANTASY GIRLS, LLC. JAMY KESHMIRI individually, also exerts day to day management and operational control over FANTASY GIRLS, LLC and is frequently present at, and owns, directs, controls and manages the operations at the club. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Defendant

JAMY KESHMIRI, as well as the other Defendants herein, refuse to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Defendant JAMY KESHMIRI is an "employer" or "joint employer" within the meaning of the Fair Labor Standards Act. Upon information and belief, Defendant JAMY KESHMIRI may be served with process at 515 S. Virginia Street, Reno, Nevada 89501.

14.     Defendant KAMY KESHMIRI is an individual who resides in Washoe County, Nevada California. He is the owner, controlling shareholder, and exerts day to day management over the defendant entities FANTASY GIRLS, LLC. KAMY KESHMIRI individually, also exerts day to day management and operational control over FANTASY GIRLS, LLC and is frequently present at, and owns, directs, controls and manages the operations at the club. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Defendant JAMY KESHMIRI, as well as the other Defendants herein, refuse to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Defendant JAMY KESHMIRI is an "employer" or "joint employer" within the meaning of the Fair Labor Standards Act. Upon information and belief, Defendant JAMY KESHMIRI may be served with process at 515 S. Virginia Street, Reno, Nevada 89501.

15.     Defendant FANTASY GIRLS, LLC ("Fantasy Girls") is a Nevada limited liability corporation with its principal place of business at 515 S. Virginia Street, Reno, Nevada 89501 that operates at 1095 E. 4th Street, Reno, Nevada. At all times mentioned herein, Fantasy Girls was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Fantasy Girls' agent for service of process is defendant KAMY KESHMIRI and is identified to be located, via with filings with the Nevada Secretary of State at 515 S. Virginia Street, Reno, Nevada 89501.

16.     DOE MANAGERS 1-3 are the managers/owners who control the

policies and enforce the policies related to employment at Fantasy Girls.

17.    Defendants' entire business model was based on taking advantage of Plaintiff by exploiting her and forcing her to participate in an invalid tip-pool with Defendants and employees of Defendants.

18.    The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOES 4 through 100, inclusive are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff prays for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiff is informed and believes, and upon such information and belief alleges thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiff, as is hereinafter alleged.

19.    Plaintiff is informed and believes that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

20.    Plaintiff is informed and believes, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiff in that each of them exercised control over her tips and the establishment's forced tip pooling procedures.

21.    Plaintiff is informed and believes, and on that basis alleges that, at all

relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

22.    At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## III.   COVERAGE

23.    At all material times, Defendants have been employers or "joint employers" within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

24.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1) and 29 C.F.R. § 1620.7. That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs. Inc.*, 346 F.3d 908, 914-15 (9th Cir. 2003).

25.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(r)(1) of the FLSA because they have had employees engaged in commerce and sell liquor at their club which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

26.    Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard

27.    At all material times during the three years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Fantasy Girls as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiff was an individual employee who engaged in

commerce or in the production of goods for commerce as required by 29 USC § 206-207

28.     The primary job duties of the named Plaintiff, and all other dancers similarly situation, consisted primarily of dancing on stage during a stage rotation, performing personal dances (also called "lap dances" or "private dances" for customers, and performing in "VIP" areas upon customer request.

29.     Pursuant to the directions of the Defendants and/or their agents, Defendants require entertainers to audition in order to be hired; however, an entertainer's physical appearance and not any level of dance, performance, or sales skill determines her suitability to perform at Defendants' clubs. Indeed, no prior experience or training is required to be hired as a dancer-entertainer.

30.     At all times relevant to this action, Plaintiff (and all those similarly situated) was subject to corporate-wide, uniform written rules, guidelines, and policies which were established by Defendants and their agents. The rules, guidelines, and policies governed entertainers' conduct at all of the clubs mentioned herein.

31.      Defendants exercised a great degree of operational control and management over Fantasy Girls particularly in terms of the conditions of employment applicable to dancers/entertainers.

32.     Defendant JAMY KESHMIRI is an owner, manager, and president of defendant FANTASY GIRLS, LLC.

33.     As the owner, operator, and manager of defendant FANTASY GIRLS, LLC employed the Plaintiff, as an employee who danced for and entertained customers.

34.     Defendants JAMY KESHMIRI controlled the nature, pay structure, and employment relationship of Plaintiff, at Fantasy Girls.

35.     Further, defendant JAMY KESHMIRI had, at all times relevant to this lawsuit, the authority to hire and fire employees at Fantasy Girls, the authority to

direct and supervise the work of employees, the authority to sign on the businesses' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, JAMY KESHMIRI was responsible for the day-to-day affairs of Fantasy Girls. In particular, he was responsible for determining whether Fantasy Girls complied with the Fair Labor Standards Act.

36.    As such, pursuant to 29 U.S.C. § 203(d), defendant JAMY KESHMIRI acted directly or indirectly in the interest of Plaintiff's employment as her employer, which makes him individually liable under the FLSA.

37.    Defendant KAMY KESHMIRI is an owner, manager, and president of defendant FANTASY GIRLS, LLC.

38.    As the owner, operator, and manager of defendant FANTASY GIRLS, LLC employed the Plaintiff, as an employee who danced for and entertained customers.

39.    Defendants KAMY KESHMIRI controlled the nature, pay structure, and employment relationship of Plaintiff, at Fantasy Girls.

40.    Further, defendant KAMY KESHMIRI had, at all times relevant to this lawsuit, the authority to hire and fire employees at Fantasy Girls, the authority to direct and supervise the work of employees, the authority to sign on the businesses' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, KAMY KESHMIRI was responsible for the day-to-day affairs of Fantasy Girls. In particular, he was responsible for determining whether Fantasy Girls complied with the Fair Labor Standards Act.

41.    As such, pursuant to 29 U.S.C. § 203(d), defendant JAMY KESHMIRI acted directly or indirectly in the interest of Plaintiff's employment as her employer, which makes him individually liable under the FLSA.

## VI.    VENUE AND JURSIDICTION

42.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201, *et seq*.

43.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendant's club is located in this District and Plaintiff, and those similarly situated worked in this District.

## V.     ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### (AGAINST ALL DEFENDANTS)

### A.     FACTUAL ALLEGATIONS

44.     Defendants operate adult entertainment clubs out of Washoe County, Nevada, including under the name of Fantasy Girls.

45.     Defendants employ exotic dancers at its aforementioned locations.

46.     Plaintiff was previously employed as an exotic dancer at Defendant's adult entertainment club Fantasy Girls.

47.     Plaintiff, and those similarly situated, worked on a regular basis for Defendant's establishments located in Washoe County known as Fantasy Girls.

48.     The job of an exotic dancer is to perform on stage, perform table dancers, and entertain customers in a "VIP" area of the Defendant's club.

49.     Plaintiff was compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiff whatsoever for any hours worked at their establishments.

50.     Furthermore, Defendants charged the Plaintiff a "house fee" per shift worked.  Defendants also required Plaintiff to share her tips with other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

51.     Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiff, was an employee of Defendants.

52.     Defendants hired/fired, issued pay, supervised, directed, disciplined,

scheduled and performed all other duties generally associated with that of an employer with regard to the dancers.

53.    In addition, Defendants instructed the dancers about when, where, and how they were to perform their work.

54.    Defendants exercised significant control over the misclassified Plaintiff, and the Collective, through written and unwritten policies and procedures. The following further demonstrates the dancers' status as employees:

a.    Defendants have the sole right to hire and fire the dancers;

b.    Defendants required dancers to complete an employee application as a prerequisite to their employment at Fantasy Girls;

c.    Defendants made the decision not to pay overtime;

d.    Defendants provide the dancers with music equipment and a performing stage;

e.    Defendants supervise the dancers, and required Plaintiff and those similarly situated to dance on stage according to a stage rotation established by the Defendants or their agents, including the Disc Jockey ("DJ"), dancers, including Plaintiff were required to dance when their name was called, and dancers were not allowed to choose which songs were played;

f.    Plaintiff has not made a financial investment with or in Defendants' business; Defendants financed all advertising and marketing efforts undertaken on behalf of the Fantasy Girls and made all capital investments in the facilities, maintenance, sound system, lights, food, beverage, and inventory, and made all hiring decisions regarding wait staff, security, entertainers, managerial, and other employees at Fantasy Girls; Plaintiff and those similarly situated were not allowed by Defendants or their agents to choose the songs that were played when they danced;

g.   Defendants schedule dancers, and required dancers to show up for work at a specific time, with a schedule issued in advance and as such have sole control over their opportunity for profit;

h.   Defendants suspended dancers for violations of their rules of conduct, including issuing fines to dancers who came to work late;

i.   Defendants set the prices for house fees, dances, and tip outs; the price for a personal dance was the same regardless of which entertainer performed the dance, and Plaintiffs, and those similarly situated, were not allowed to charge a different price than the price established by Defendants; t the prices for personal dances ("lap dances") or private room ("VIP") dances was also set by the Defendants and was the same regardless of which dancer was performing a personal dance or spending time in VIP with a customer;

j.   In addition to house fees, pursuant to the directions of the Defendants and/or their agents, Plaintiff and all other dancers/entertainers at Fantasy Girls were also required to pay "tip outs" each night the worked;

k.   The dancers were hired as permanent employees and many have worked for Defendants for years; and

l.   Little or no skill was required for the work Plaintiff or those similarly situated was required to perform at Defendants' clubs.

55.   Defendants misclassified Plaintiff as an independent contractor to avoid Defendants' obligation to pay her pursuant to the Fair Labor Standards Act, and Plaintiff was dependent upon customers tips, making her opportunity for profit or loss a function of how much money customers have and are willing to spend and how much Defendants required Plaintiff to pay in order to work.

56.    At all times pertinent to this action, Defendants regulated entertainers' attire and interactions with customers.

57.    Pursuant to the direction of the Defendants and/or their agents, Plaintiffs and all other dancers/entertainers at the Defendants' clubs were required to show up for work at a specific time, and to make up a schedule in advance. If entertainers are late for work, fail to appear for a scheduled shift, or are deemed to have violated any of the Club's rules, they are charged additional fees or fines.

58.    Plaintiff, and the members of the collective she seeks to represent, has been subject to a variety of these fees and fines during the last three years; the fees and fines constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act, and Plaintiff and the collective are entitled to restitution of all such fees and fines.

59.     Defendants' primary business purpose is to make money; they do so by attracting customers who wish to see women nude or in various stages of undress. The services performed by dancers/entertainers are integral to the success of the Defendants and Fantasy Girls.

60.    Pursuant to the directions of the Defendants and/or their agents, entertainers at any of The Library Gentlemen's Clubs were not allowed to hire subcontractors to perform their duties for them. The right to dance as an entertainer at Defendants' club was a personal right, and only people hired by Defendants' managerial staff were allowed to perform at Defendants' club.

61.    Plaintiff worked over forty hours in some weeks she worked for Defendants.

62.    Defendants have never paid Plaintiff any amount as wages whatsoever, and have instead unlawfully required Plaintiff to pay for the privilege of working.

63.    The only source of monies received by Plaintiff relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which she was required to pay to Defendants.

64.     Although Plaintiff was required to and do in fact frequently worked more than forty (40) hours per workweek, she was not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, she received no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

65.     Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the sole intent to avoid paying her in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiff is entitled to restitution of such fines and fees.

66.     Defendants never took possession of the payments made to Plaintiff or those similarly situated.

67.     Defendants failed to include Plaintiff's earnings, or those earnings from those similarly situated to Plaintiff, in Defendants' gross receipts for tax or accounting purposes.

68.     The FLSA "economic realities" test has existed for decades, as have the FLSA requirements of paying minimum wage and overtime to employees.

69.     Defendants' failure to comply with the FLSA in all respects, including the misclassification scheme at issue in this lawsuit, is, and was, willful.

70.     Defendants knew, or showed reckless disregard for the fact that they misclassified dancers as independent contractors, and accordingly failed to pay dancers the minimum wage and overtime wage at the required rate under the FLSA and unlawfully deducted tip-outs and "house fees" from their pay.

71.     The Plaintiff, and those she seeks to represent, was/were not covered by any minimum or overtime wage exemption contained in the FLSA.

72.     Defendants failed to keep adequate records of Plaintiff's and FLSA Class Members' work hours and pay in violation of section 211(c) of the Fair Labor

Standards Act. *See* 29 U.S.C. § 211(c).

73.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.     The hours worked each workday and total hours worked each workweek;

f.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.     The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.     The dates, amounts, and nature of the items which make up the total additions and deductions;

j.     The total wages paid each pay period; and

k.     The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

74.     Defendants have not complied with Federal Law and have failed to

maintain such records with respect to the Plaintiff. Because Defendants' records are inaccurate and/or inadequate, Plaintiff can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff seeks to put Defendants on notice that she intends to rely on *Mt. Clemens Pottery Co.* to provide the extent of her unpaid work.

### B.   INDIVIDUAL LIABILITY UNDER THE FAIR LABOR STANDARDS ACT

75.     In *Boucher v. Shaw*, the U.S. Court of Appeals for the Ninth Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer." *Boucher v. Shaw* (9th Cir. 2009) 572 F.3d 1087, 1088. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

76.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley* (9th Cir. 1999) 180 F.3d 997. The Ninth Circuit highlighted factors related to "economic control," which included ownership interest; operational control of significant aspects of the day-to-day functions; the power to hire and fire employees; determine salaries; and the responsibility to maintain employment records.

77.     Defendants JAMY KESHMIRI and KAMY KESHMIRI are individually liable for failing to pay Plaintiff and the FLSA Class Members their wages. The actual identities of DOE Managers 1-3 (and perhaps DOES 4 through

100) are unknown at this time.

## VII.   COLLECTIVE ACTION ALLEGATIONS

78.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Demand, as though fully set forth herein.

79.   Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three (3) years prior to the commencement of this action to present.

80.   Plaintiff has actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty hours per workweek, forced to pay illegal house fees, had gratuities and tips pooled and/or illegally diverted and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiff worked with other dancers at Fantasy Girls. As such, she has first-hand personal knowledge of the same pay violations throughout Defendants' clubs. Furthermore, other exotic dancers at Defendants' Fantasy Girls have shared with her similar pay violation experiences as those described in this Complaint.

81.   Other employees similarly situated to the Plaintiff work or have worked at Defendants' Fantasy Girls but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek. The other similarly situated dancers were forced to pay Defendants "house fees" to work and had their tips pooled or diverted. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

82.   Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

83.   FLSA Class Members perform or have performed the same or similar

work as the Plaintiff.-dancing and entertaining at Defendants' clubs.

84. FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

85. The FLSA class members were all subject to the same terms and conditions of employment, and the same degree of control, direction, supervision imposed by Defendants.

86. FLSA Class Members perform or have performed the same or similar work as the Plaintiff.

87. FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

88. FLSA Class Members regularly work or have worked and did not receive minimum wage.

89. FLSA Class Members regularly were forced to pay "house fees" in order to work.

90. FLSA Class Members regularly had their tips both pooled and diverted.

91. FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

92. As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

93. Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

94. The experiences of the Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

95. The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

96.   All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

97.   All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

98.   Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Class Members.

99.   Named Plaintiff is "similarly situated" to the class of persons she seeks to represent, and will adequately represent the interests of the class.

100.   Plaintiff has hired counsel experienced in labor and employment cases and collective actions under 29 U.S.C. 216(b) who will adequately represent the class.

101.   As such, Plaintiff brings her FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers who worked at Fantasy Girls at any time starting three years before this Complaint was filed.**

## VIII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206**

**(AGAINST ALL DEFENDANTS)**

102.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

103. Defendants are or were the "employer" or joint-employers and employ(ed) Plaintiff and those similarly situated, and Plaintiff and those similarly situated were the "employees" those "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

104. Defendants are engaged in "commerce" and/or the production of "goods" for "commerce."

105. Defendants are an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because their annual gross volume of sales made is more than $500,000.

106. Plaintiff consented to sue in this action pursuant to 29 U.S.C. § 216(b). Written Consent to sue executed by Plaintiff was submitted herewith.

107. Defendants misclassified Plaintiff as independent contractor.

108. Defendants failed to pay Plaintiff and all other similarly situated wages at a rate of one and one-half (1 ½) times her regular rate, for hours worked in excess of forty (4) hours per week, in violation of 29 U.S.C. § 207.

109. Defendants knowingly, intentionally and willfully violated the FLSA.

110. Defendants' mischaracterization of Plaintiff as "independent contractors", with the consequence of having failed to pay them premium overtime compensation for hours worked in excess of 40 hours per work week, constitutes a willful violation of the FLSA, and Defendants did not rely on any determinations or rulings of the U.S. Department of Labor in utilizing same.

111. Due to Defendants' FLSA violations, Plaintiff and all other similarly situated are entitled to recover from Defendants, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

112. Defendants' practice of failing to pay Plaintiff time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207. In

fact, Defendants do not compensate them whatsoever for any hours worked.

113. In at least one-week Plaintiff worked more than 40 hours per week, but were not compensated at all by Defendants

114. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendants or the Plaintiff.

115. Due to Defendants' FLSA violations, Plaintiff and the FLSA Class Members are entitled to recover from Defendants, minimum wage compensation of $7.25 per hour, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207
### (AGAINST ALL DEFENDANTS)

116. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Demand, as though fully set forth herein.

117. Each Defendant is an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

118. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

119. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

120. Defendants failed to pay Plaintiff the applicable overtime wage for each hour in excess of forty (40) during each workweek in which she worked in violation

of 29 U.S.C. § 207.

121.   Defendants' practice of failing to pay Plaintiff at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate dancers whatsoever for any hours worked.

122.   None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiff.

123.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the overtime wage required under the FLSA.

124.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

125.   Due to Defendants' FLSA violations, Plaintiff and the FLSA Class Members are entitled to recover from Defendants, overtime wage  compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS / ILLEGAL DIVERSION-KICKBACK
### IN VIOLATION OF 29 U.S.C. § 203
### (AGAINST ALL DEFENDANTS)

126.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Demand, as though fully set forth herein.

127.   Plaintiff customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

128.   At all relevant times, each Defendant is an "employer" or joint employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

129.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

130.   Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

131.   Tips belong to the employee: Plaintiff is entitled to recover payments made by Plaintiff to the Club and its employees and workers because the as part of her minimum wage and overtime wage losses because such payments reduced her wages below the minimum and overtime wage. These types of illegal "kick-backs" that the dancers paid from their tips in order to work are recoverable as part of Plaintiffs' wage loss under 29 C.F.R. § 531.35.

> Unlawful "kick-backs" must be returned to Plaintiffs to bring their lost wages up to zero, and not leave them at a negative number. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995). "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Id*. To fully compensate a minimum wage employee where the employer has improperly required him to pay kickbacks, the Defendant employer must pay the full minimum wage for all time worked, in addition to all fees collected. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 330 (5th Cir. 1993); *Richard Martin,* No. 13-CV-4242-RWS, at *9 (N.D.Ga. Nov. 20, 2015).

Under the FLSA, wages must be paid "finally and unconditionally" or "free and clear" of any direct or indirect "kickbacks." 29 C.F.R. § 531.35 states:

> [w]hether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of

the Act will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick back' is made in cash or in any way other than cash. . . . . [T]here would be a violation of the Act in any work week when the cost . . . by the employee cuts into the minimum or overtime wage required to be paid . . . under the Act.

Wages under the FLSA must be received "free and clear" of any improper deduction. *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1241 (11th Cir. 2002. "[R]equiring employees to pay for expenses incurred for the benefit of the employer functions as a *de facto* wage deduction." *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1315 (N.D.Ga. 2008). In fact, there is "no difference between deducting an expense and failing to reimburse an expense." *Id*.

The mandatory payment of house fees and "tip-out" fees required to be paid by entertainers are the exact type of unlawful "kickbacks" prohibited by the FLSA. These payments are recoverable as part of a FLSA wage claim to the extent they reduce the employee's wage below the minimum or overtime rate. *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D.Tex. 1995); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 330 (5th Cir. 1993); *Hart v. Rick's Cabaret International, Inc.*, 60 F.Supp.3d 447, 477 (S.D.N.Y. 2014). The clubs "practice of collecting a tip out fee . . . violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." *Reich.*, 890 F. Supp. at 595. "[T]o fully compensate the entertainers in the amounts required by the FLSA, [the club] must pay them the full minimum wage for all time worked during the limitations period. In addition, the club must return all tip out fees collected from the entertainers.". *Id*. "[T]he Court agrees with Plaintiffs that 'the method of calculating Defendants' back wage liability at trial should be (1) $7.25 per hour worked, plus (2) all [house fees] paid by Plaintiffs to Defendants. . . ." *Roger Wilson v. 1400 Northside Drive, Inc.*, Civil Action No. 1:15-CV-4453-SCJ, * 21 (June 15, 2017 N.D.Ga.).

132.   Plaintiff's (and those similarly situated) post March 2018 employment is covered by the TIPA. Under TIPA:

Under TIPA:

[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

133.   Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJ and floor men in violation of TIPA.

134.   Defendants required Plaintiff to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the Club DJ, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

135.   The contribution the Defendants required Plaintiff to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiff other dancers; but rather, was imposed upon Plaintiff and other dancers.

136.   By requiring Plaintiff to pool her tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

137.   Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff.

138.   At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this,

Defendants willfully failed and refused to pay Plaintiff the proper amount of the tips to which she was entitled.

139.   Defendants' willful failure and refusal to pay Plaintiff the tips she earned violates the FLSA.

140.   Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJs, and door men in violation of TIPA

141.   As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiff is entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

142.   As a result of Defendants willful violation of TIPA, Plaintiff and the FLSA Class Members are entitled to recover, under the FLSA and TIPA, all tips kept by the employer, any tip credit claimed by Defendants, an equal amount in liquidated damages and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Class, prays for relief and judgment as follows:

1.    Certifying the Class as requested herein;

2.    Providing such further relief as may be just and proper.

3.    Appointing Plaintiffs and their counsel to represent the Class;

In addition, Plaintiff, and the FLSA Class Members pray for further judgment as follows:

4.    As to Count I, award Plaintiff and the FLSA Class Members judgment for wages at the minimum rate, including the recovery of all payments reducing wages below the minimum wage, as well as liquidated damages, interest and attorneys' fees as provided for under the FLSA;

5.     As to Count II, award Plaintiff and the FLSA Class Members judgment for overtime wages, including the recovery of all payments reducing wages below the overtime wage, as well as liquidated damages in an equal amount, interest and attorneys' fees as provided for under the FLSA;

6.     As to Count III, award Plaintiff and the FLSA Class Members judgment for the recovery of all tips kept by the employer, the amount of any tip credit claimed by Defendants, an equal amount in liquidated damages and reasonable attorneys; fees under the FLSA and TIPA;

7.     Award Plaintiff and the FLSA Class Members the costs of this action, including expert fees;

8.     Award Plaintiff and the FLSA Class Members interest;

9.     Award Plaintiff and the FLSA Class Members attorneys' fees; and

10.     For equitable and injunctive relief, including public injunctive relief; and

11.     Award Plaintiff such other and further relief as the Court may deem just and proper.

Dated: September 27, 2019                    **THE O'MARA LAW FIRM, P.C.**

                                             */s/ David C. O'Mara*
                                             David C. O'Mara
                                             ***Attorneys for Plaintiff***

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated: September 27, 2019                    THE O'MARA LAW FIRM, P.C.

                                             */s/ David C. O'Mara*
                                             David C. O'Mara
                                             ***Attorneys for Plaintiff***