UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MARLONESHA BECKER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KAMY KESHMIRI, JAMY KESHMIRI, FANTASY GIRLS, LLC,

Defendants.

Case No. 3:19-cv-00602-LRH-WGC

ORDER

Defendants have filed a motion to dismiss the complaint of plaintiff Marlonesha Becker. (ECF No. 12). Becker responded (ECF No. 21), and defendants replied (ECF No. 22). Also pending before the Court is defendants' motion to strike statements Becker made in her response to their motion to dismiss. (ECF No. 23). For the reasons stated below, the Court denies defendants' motion to strike and grants their motion to dismiss.

**I. Factual Background and Procedural History**

This case concerns whether defendants have violated requirements within the Fair Labor and Standards Act (FLSA) by not paying dancers at one of their nightclubs sufficient wages. Becker formerly worked at Fantasy Girls, an adult cabaret nightclub in Reno, Nevada, as an exotic dancer from June 2018 to April 2019. (ECF No. 1 at 2). The Keshmiri defendants own Fantasy Girls and several other similar establishments throughout the Reno area. (*Id*. at 10). Becker alleges that defendants never paid her a regular salary; instead, she was compensated solely through customer tips, which she was required to share with coworkers who did not customarily receive

tips. (*Id*.) Becker also alleges that she was charged a "house fee" for every shift she worked. (*Id*.) During the course of her employment, defendants instructed Becker and the other dancers on "when, where, and how" they were to perform their work. (*Id*. at 11). This included setting rotational schedules for the dancers, instructing the dancers when to perform during the night, and issuing fines and suspensions to dancers who violated the rules. (*Id*. at 11–12). Defendants also set the prices for the types of dances Becker was required to perform, such as personal dances and "VIP" dances. (*Id*. at 12). Despite the control defendants exercised over Becker's work activities, she argues that they improperly classified her as an independent contractor, rather than an employee, to avoid their obligations under the FLSA. (*Id*.)

Before Becker began to work at Fantasy Girls, she signed an "agreement" entitled "Dancer/Entertainer Independent Contractor Agreement With Arbitration and Class Action Waiver Provisions." (ECF No. 12 at 3). Relevant here, the document included a mandatory arbitration provision:

> [Fantasy Girls] and [Becker] mutually agree that any dispute or controversy arising out of or in any way related to any "Dispute," as defined herein, shall be resolved exclusively by final and binding arbitration. Such arbitration shall be held in Reno, Nevada pursuant to the applicable rules for arbitration then in effect and however title of the American Arbitration Association.

(ECF No. 12-1 at 6). The term "dispute" is defined in the following section of the agreement:

> For the purposes of this Agreement, the term "Disputes" means and includes any claim or action arising out of or in any way related to the hire, employment, remuneration, separation, or termination of the contractor at any time…[t]he potential "Disputes" which the parties agree arbitrate [sic], pursuant to this Agreement, include…claims that the Contractor is an employee rather than an independent contractor, claims for wages or other compensation due…

(*Id*.) In another provision, defendants and Becker agreed to waive "any and all rights to have any Dispute heard or resolved in any forum other than through arbitration as provided herein, and the [sic] only on an individual basis rather than as a participant in any class or collectively [sic] action." (*Id*. at 7). The waiver included "any right to trial by Jury and the right to bring any action in any court." Notably, the agreement contained a ten day right of rescission, and a separate agreement between the parties allowed either party to opt out of the class action or arbitration provisions within the main agreement within thirty days. (*Id*. at 10).

///

Becker filed her complaint in this Court on September 30, 2019, alleging three causes of action: (1) failure to pay minimum wage; (2) failure to pay overtime wages, and (3) unlawful taking of tips and/or kickbacks. (ECF No. 1). Defendants then filed the instant motion to dismiss on November 19, and Becker responded. In Becker's response, she stated that counsel for defendants may have previously represented her along with several other exotic dancers in an action against the city of Reno in 2018. (ECF No. 21 at 13–14). This prompted defendants to file a motion to strike that portion of Becker's response, asserting that their current counsel had not represented her in that action. (ECF No. 23). Defendants' motion to strike and motion to dismiss are now pending before the Court.

## II. Legal Standard

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

1    In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

2    true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a

3    formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth."

4    *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681)

5    (brackets in original) (internal quotation marks omitted). The court discounts these allegations

6    because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the

7    form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive

8    a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

9    content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

10                                        **III. Discussion**

11                             **A. Defendants' Motion to Strike**

12    Before addressing the merits of defendants' motion to dismiss, the Court will discuss

13    defendants' motion to strike the portion of Becker's response that mentions a potential conflict of

14    interest between her and defense counsel. Defense counsel argues that Becker was never a plaintiff

15    in the action where they represented numerous dancers in Case No. 3:18-cv-00285-MMD-WGC,

16    which involved facts completely unrelated to this case. (ECF No. 23 at 3). Defense counsel asserts

17    that Becker "did not sign a consent to representation in that case" and that she "was not named in

18    any documents submitted to the court as being represented" by them. (*Id.*) They state that to the

19    best of their knowledge, no one from their firm has ever spoken to Becker. (*Id.* at 4).

20    Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any

21    redundant, immaterial, impertinent, or scandalous matter." A matter is immaterial if it "has no

22    essential or important relationship to the claim for relief or the defenses being pleaded." *Rees v.*

23    *PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015). As defendants recognize, motions to strike

24    are generally disfavored and "should not be granted unless the matter to be stricken clearly could

25    have no possible bearing on the subject of the litigation." *Id.* (citing *Platte Anchor Bolt, Inc. v. IHI,*

26    *Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004)). If there is any doubt as to whether the

27    allegations might be an issue in the action, the court should deny the motion. *In re 2TheMart.com,*

28    *Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). Whether to grant a motion to

strike is within the discretion of the district court. *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

The portion of Becker's response to defendants' motion to dismiss that discusses a potential conflict of interest with defense counsel is not responsive to defendants' motion, which is largely based on the arbitration provisions contained within Becker's employment agreement. If Becker believed (or had a good faith reason to believe) that a conflict existed, she should have filed a motion to disqualify defense counsel. Courts generally do not disqualify an attorney because of a conflict of interest unless the former client moves for disqualification. *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). Becker recognizes that such a motion is required before the Court will consider disqualification. (ECF No. 21 at 16). If Becker needed more information from defense counsel about their prior representation of the exotic dancers, the appropriate course of action would have been to contact defense counsel and ask for such information, and if it was not given, to file a motion to compel. No such motion has yet been filed. Moreover, the individual who should know—better than anyone else—whether she was represented by defense counsel or had any discussions with them about including her in the other lawsuit would be Becker herself.

Even so, Becker is correct in asserting that Rule 12(f) only applies to "pleadings," which do not include responses to motions to dismiss. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike."). *See also Espinosa v. Bannister*, No. 3:14-cv-00668-RCJ-VPC, 2016 WL 3633439, at *2 (D. Nev. July 5, 2016) (denying motion to strike a portion of a reply brief because it was not a "pleading"); *Green v. Lew*, No. 2:14-cv-00740-KJD-VCF, 2014 WL 4471637, at *11 (D. Nev. Sept. 10, 2014) (denying motion to strike a motion for summary judgment and opposition to summary judgment because they were not "pleadings"). Although the Court will not consider the issues raised in that portion of Becker's response unless and until she files a motion to disqualify defense counsel, it will deny defendants' motion to strike.[1]

///

---

[1] Defendants have also filed two additional motions to strike documents Becker filed following the close of briefing on the motion to dismiss (ECF Nos. 30, 35). The Court will deny these motions because they are mooted by the Court's order today.

## B. Defendants' Motion to Dismiss

Turning to the merits of defendants' motion to dismiss, they argue that the employment agreement Becker signed contains an explicit arbitration provision and a provision opting out of any class action suit. (ECF No. 12 at 7). Indeed, Becker does not argue that the employment agreement she signed did not contain such provisions, instead focusing her argument on whether the mandatory arbitration and class action waiver provisions are invalid as a matter of public policy. If they are invalid, then her lawsuit may proceed in this Court, but if they are valid, defendants' motion to dismiss must be granted. The Federal Arbitration Act (FAA) states that written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, binding, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. If a court is satisfied that the making of the arbitration agreement is not at issue, then the court must order arbitration. *Howard Elec. & Mech. Co. v. Frank Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985) (courts "can only determine whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms").

The question of whether an arbitration agreement is valid is governed by state law. *Lowden v. T–Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir. 2008). Nevada public policy favors arbitration because it generally avoids the higher costs and longer time periods associated with traditional litigation. *Burch v. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002). One way for a contract to be declared void is if it is unconscionable, but it must be both procedurally and substantively unconscionable before a court will declare it or a provision of it void. *U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32, 40 (Nev. 2018). Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *abrogated on other grounds*, *U.S. Home Corp.*, 415 P.3d 32. The reverse is also true—when there is great substantive unconscionability, less procedural unconscionability is required. *Gonski v. Second Judicial District Court*, 245 P.3d 1164, 1169 (Nev. 2010), *abrogated on other grounds*, *U.S. Home Corp.*, 415 P.3d 32. Under Nevada law, an arbitration clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause

and its effects are not readily ascertainable upon a review of the contract." *Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-1932-JCM-NJK, 2014 WL 1577295, at *13 (D. Nev. Apr. 17, 2014). On the other hand, substantive unconscionability focuses on the "one-sidedness" of the contract terms. *Id*. The plaintiff bears the burden of demonstrating that an arbitration agreement is procedurally and substantively unconscionable. *L&M Creations, Inc. v. CRC Information Systems*, No: 2:10-cv-00685-GMN-GWF, 2011 WL 1103636, at *3 (D. Nev. Mar. 23, 2011).

**A. Procedural Unconscionability**

Becker first argues that the employment agreement she signed was procedurally unconscionable because it was a "take it or leave it" contract of adhesion. (ECF No. 21 at 9). She states that she had no opportunity to negotiate any of the provisions within the agreement, such as the confidentiality clause. (*Id*.) Further, Becker asserts that even though the employment agreement contained a provision that allowed her to opt out of the arbitration provision within thirty days, the agreement is still procedurally unconscionable because she would not have been able to continue working after opting out of arbitration. (*Id*.)

To determine whether an agreement is procedurally unconscionable, the Court must evaluate how the parties negotiated the contract and the circumstances of the parties at that time. *Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-1932-JCM-NJK, 2014 WL 1577925, at *14 (D. Nev. Apr. 17, 2014). Courts consider whether the contract is oppressive and whether it contains surprise. *Id*. "Surprise" is defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (interpreting Nevada law). "Oppression" has been defined as terms "springing from an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." *Id*.

Becker's argument that that her employment contract is a contract of adhesion fails because Nevada does not apply the adhesion contract doctrine to employment cases. *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 996 P.2d 903, 907 (Nev. 2000). This Court has repeatedly rejected the same argument that Becker makes here—that employment agreements can be deemed contracts of adhesion. *See, e.g., Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-1932-JCM-

7

NJK, 2014 WL 1577925 (D. Nev. Apr. 17, 2014); *Pruter v. Anthem Country Club*, No. 2:14-cv-01028-GMN-PAL, 2013 WL 5954817 (D. Nev. Nov. 5, 2013). This is true even if an employee is threatened with termination if they do not sign a particular employment contract. For example, in *Pruter*, following a change in company management, the plaintiff was told by her new employer that if she did not sign a mandatory arbitration agreement, she would be fired. *Pruter*, 2013 WL 5954817 at *2. She did so and then filed a lawsuit against her employer, arguing in part that the arbitration agreement she signed was procedurally unconscionable because it was a contract of adhesion that made her choose between losing her job and waiving the right to sue her employer. *Id*. *2–3. This Court, however, found that even though the plaintiff would lose her job if she did not sign the arbitration agreement, the agreement itself was not procedurally unconscionable because of well-established Nevada law concerning the adhesion doctrine. *Id*. *9. The influence the plaintiff's employers had over her was substantially greater than defendants had over Becker here; had Becker refused to sign the now-disputed employment agreement, she would be in no worse of a position than when she started. But in *Pruter*, had the plaintiff refused to sign the agreement, she would have been fired. If the circumstances in *Pruter* do not result in a finding of procedural unconscionability, then such a finding is not possible here.

Becker has not advanced any other arguments that would show procedural unconscionability, such as that the arbitration provision was in fine print or otherwise concealed within the employment agreement. Accordingly, the Court finds that the employment agreement is not procedurally unconscionable.

## B. Substantive Unconscionability

Becker highlights three provisions within the employment agreement as evidence of substantive unconscionability. First, she argues that the confidentiality clauses in paragraphs 4 and 9.7 are "illegal" given that the FLSA prohibits confidential cases or settlements. (ECF No. 21 at 9). Second, she points to the employment agreement's fee shifting clause also contained in paragraph 9.7, which allows the arbitrator to award Becker or defendants reasonable attorney's fees in accordance with the law if they are successful at arbitration. (*Id*. at 11). Under the FLSA, however, Becker notes that only the plaintiff can be awarded fees and that such an award is

mandatory in the event of a positive result. (*Id*.) Third, Becker argues that the agreement's failure to provide the specific rules that will govern the arbitration also renders the employment agreement substantively unconscionable. (*Id*. at 12–13.)

When determining whether a contract is substantively unconscionable, courts look for terms that are "oppressive." *Gonski v. Second Judicial District Court*, 245 P.3d 1164, 1169 (Nev. 2010), *abrogated on other grounds*, *U.S. Home Corp.*, 415 P.3d 32. In an unpublished case, the Nevada Supreme Court noted that the "presence of [a] confidentiality provision precluding the use or release of evidence outside the arbitration proceeding demonstrates substantive unconscionability." *Henderson v. Watson*, No. 64545, 2015 WL 2092073, at \*3 (Nev. Apr. 29, 2015). The reasoning behind this prohibition is to prevent employers from hiding information that could benefit similarly situated plaintiffs in future cases. *Ting v. AT&T*, 319 F.3d 112, 1151-52 (9th Cir. 2003). In their reply, defendants argue that the confidentiality provision found in paragraph 9.7 only prohibits Becker from disclosing "trade secrets" that may be revealed during the arbitration process. (ECF No. 22 at 4.) But this provision also prohibits the disclosure of any "proprietary and confidential" information. (ECF No. 12-1 at 7). "Confidential information" is defined as "all confidential technical and commercial information, including, but not limited to the contents of reports, specifications, quotations, formulae, computer records, client lists, price schedules, customer lists, customers and the like." (*Id*. at 5.)

Upon a review of the contract, there does not appear that the confidentiality provision prohibits the disclosure of information such as the nature of Becker's claims against defendants or the results she obtains in arbitration. These are the provisions that the Ninth Circuit has been especially critical of because they prevent plaintiffs from having a full and fair opportunity to present their case to the arbitrator. The *Ting* court found that a confidentiality provision that prohibited disclosure of the existence, contents, and results of any arbitration between the plaintiff and defendant was unconscionable. *Ting v. AT&T*, 319 F.3d 112, 1151-52 (9th Cir. 2003). In the employment law context, the Ninth Circuit found a similar confidentiality provision to be substantively unconscionable in *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007), *overruled on other grounds by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th

9

Cir. 2013). In *Davis*, the confidentiality clause prohibited the employee from mentioning the arbitration's existence to anyone "not directly involved" in it, which effectively prevented the employee from speaking to potential witnesses or her coworkers about the case. *Id*. The Ninth Circuit noted that such a provision "would handicap if not stifle an employee's ability to investigate and engage in discovery." *Id*. Whereas the employee would have no such opportunity, the defendant would have unlimited access to engage in discovery. Perhaps more importantly, employees would be barred from accessing precedent, but the defendant would "learn how to negotiate and litigate its contracts in the future," putting it in a far superior legal position with each subsequent case. *Id*.

Here, the confidentiality provision concerning arbitration only precludes public disclosure of trade secrets and confidential information. (ECF No. 12-1 at 7). Becker is not prohibited from speaking to her coworkers or anyone else regarding her arbitration against defendants. Nor is she prohibited from discussing the existence of the arbitration, the nature of her claims against defendants, or the outcome of the arbitration. Accordingly, the confidentiality provision does not shield defendants in the future if another exotic dancer seeks to arbitrate similar claims against them. Because the confidentiality clause only prevents the disclosure of trade secrets and other confidential information, the Court finds that it is not substantively unconscionable.

Becker also points to a provision in paragraph 9.7 in the agreement that she argues prevents her from recovering attorney's fees in the event that she is successful at arbitration. (ECF No. 21 at 11). In addition to the confidentiality provision discussed above, paragraph 9.7 provides that each "party shall pay for its own attorney's fees and costs, if any," but "if any party prevails on a statutory claim that affords the prevailing party attorney's fee…then the Arbitrator may award reasonable fees to the prevailing party." (ECF No. 12-1 at 7). Becker argues that this clause subverts a provision within the FLSA that requires a court to award attorney's fees to a prevailing plaintiff. (ECF No. 21 at 11); 29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant").

///

Fee shifting clauses that expose a party to greater costs in arbitration than they would bear in court are generally unconscionable. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010). This is not the situation here, as paragraph 9.7 of the agreement limits Becker's arbitration expenses to no more than "the then-current total filing fee and costs in any court in which [she] could have filed suit." (ECF No. 12-1 at 7). *See Echevarria-Hernandez v. Affinitylifestyles.com, Inc.*, No. 2:16-cv-00943-GMN-VCF, 2017 WL 1160571, at *4 (D. Nev. Mar. 27, 2017) (finding that a similar provision was not substantively unconscionable). In FLSA actions, a prevailing plaintiff is entitled to reasonable attorney's fees. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (noting that the award is "mandatory"). Unlike plaintiffs, defendants are not eligible to receive attorney's fees upon a successful result in a FLSA case except if the plaintiff litigated the case in bad faith. *Phelps v. MC Communications, Inc.*, No. 2:11-cv-00423-PMP-LRL, 2011 WL 3298414, at *7 (D. Nev. Aug. 1, 2011) (citing *Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763, 767 (9th Cir. 1984); *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009)).

Defendants argue that the provision complies with the FLSA's mandatory award of attorney's fees (ECF No. 22 at 6), but a plain reading of it belies their argument. Paragraph 9.7 states that the arbitrator "may" award reasonable fees to any party that prevails on a statutory claim that allows for such awards, which leaves the final decision of whether to award fees to the arbitrator's discretion. (ECF No. 12-1 at 7). As recognized by the Supreme Court in *Christiansburg Garment Co.*, a successful FLSA plaintiff is always entitled to reasonable attorney's fees. When a party agrees to arbitrate a statutory claim, it "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 996 P.2d 903, 909 (Nev. 2000). The clause in paragraph 9.7 conflicts with clearly established precedent, and as such, it is substantively unconscionable.

As for the lack of specific arbitration rules within the agreement, this Court has previously rejected the same argument Becker makes because "including a copy of the arbitration rules cited to in the arbitration agreements would not have aided Plaintiffs' understanding of an already simple

and clear arbitration agreement." *Sheehan v. Sparks Black Bear, LLC,* No. 3:18-cv-00510-HDM-CBC, 2019 WL 591445, at *3 (D. Nev. Feb. 13, 2019). Here, the arbitration agreement is also written in plain language, and moreover, Becker has not cited to any cases that have found that the failure to attach the complete arbitral rules to an employment contract is substantively unconscionable.

On the balance, while the fee shifting clause provides some evidence of substantive unconscionability, that is the only portion of the agreement that could qualify as such. Becker has not demonstrated that the agreement is procedurally unconscionable or that any provision other than the fee shifting provision is substantively unconscionable. Typically, when one provision within an arbitration agreement is improper, the solution is not to invalidate the entire agreement, but rather to sever the suspect provision from the rest of the contract. Like most other states, Nevada recognizes the doctrine of severability. *Sprouse v. Wentz*, 781 P.2d 1136, 1140 (Nev. 1989). Severability "preserves the contracting parties' intent by maintaining the existence of a contract but striking illegal provisions that are collateral to the contract's primary purpose." *Cox v. Station Casinos, LLC*, No. 2:14-cv-638-JCM-VCF, 2014 WL 3747605, at *4 (D. Nev. June 25, 2014). As this Court recognized in *Cox*, provisions that are related to remedies are more easily severable because they are collateral to the clause compelling arbitration. *Id.* *5 (citing 8 WILLISTON ON CONTRACTS §19:70). That is the case here, as the provision in question deals with an award of attorney's fees. The Court will therefore sever the provision of the arbitration agreement that gives the arbitrator discretion to award attorney's fees to Becker in the event she is successful at arbitration. *See, e.g., Lara v. Onsite Health, Inc.*, 896 F.Supp.2d 831, 848 (N.D. Cal. 2012) (severing provision of an arbitration agreement that provided injunctive relief but preserving the remainder of the agreement and compelling arbitration). The Court will direct the arbitrator to award any attorney's fees in accordance with the well-settled Supreme Court and Ninth Circuit authority outlined in this order.

### C. Defendants' Request to Compel Arbitration

Alongside their motion to dismiss, defendants have requested that the Court compel Becker to arbitration. (ECF No. 12 at 1–2). When determining whether a party should be compelled to

arbitrate claims, the court engages in a two-step inquiry. First, the court must determine whether a valid agreement to arbitrate exists. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Second, if it does, the court then must look to see if the agreement encompasses the dispute at issue. *Id*. If the answer to both questions is "yes," then the court must enforce the arbitration agreement. *Id*. When judging the scope of an arbitration agreement, Nevada courts resolve all doubts concerning the arbitrability of the dispute in favor of arbitration. *Int'l Assoc. Firefighters v. City of Las Vegas*, 764 P.2d 478, 480 (Nev. 1988).

The Court has already found that a valid arbitration agreement exists.[2] As for the second part of the inquiry, it is clear that the agreement encompasses Becker's claims. In her complaint, Becker raises three causes of action: failure to pay minimum wage, failure to pay overtime wages, and unlawful taking of tips, violations of 29 U.S.C. §§203(d), 207, and 203 respectively. (ECF No. 1 at 1). The mandatory arbitration provision requires arbitration for all "disputes," which, in relevant part, includes "claims for wages or other compensation due." (ECF No. 12-1 at 6). This encompasses each of Becker's causes of action. The Court will therefore order that the parties arbitrate Becker's claims.

### IV. Conclusion

IT IS THEREFORE ORDERED that defendants' motion to strike (ECF No. 23) is **DENIED**.

IT IS FURTHER ORDERED that defendants' motions to strike (ECF Nos. 30, 35) are **DENIED AS MOOT**.

IT IS FURTHER ORDERED that defendant's motion to dismiss (ECF No. 12) is **GRANTED**. Becker's complaint is dismissed **WITHOUT PREJUDICE**. The Court will order the parties to arbitration to be conducted pursuant to the employment agreement but will **SEVER** the portion of the arbitration agreement giving the arbitrator discretion on whether to award

---

[2] In her response, Becker makes a brief argument that the contract she signed with defendants was not properly authenticated. (ECF No. 21 at 13). In their reply, defendants attached a signed declaration from Dale Tucker, the day manager at the establishment Becker worked at while she worked for defendants. (ECF No. 22-1). In Tucker's declaration, he states that he witnessed Becker signing the agreement and that he signed it alongside her. (*Id*. at 1). This is sufficient evidence to properly authenticate the document, especially considering that Becker has not made any other challenge to the authenticity of the employment agreement. Fed. R. Evid. 901(a).

1    attorney's fees to Becker if she is successful. Instead, the arbitrator is directed to award attorney's

2    fees in accordance with settled the Supreme Court and Ninth Circuit authority outlined within this

3    order. The Clerk of Court is directed to close this case.

4         IT IS SO ORDERED.

5         DATED this 26th day of May, 2020.

6

7                                                    _____
                                                     LARRY R. HICKS
8                                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28